**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Angel RODRIGUEZ–LUNA,
Defendant–Appellant.**

**No. 90–1983.**

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1991.

Decided July 22, 1991.

Barbara F. Lazarus, Crim. Div., Barry R. Elden, Ross O. Silverman, Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Deborah J. Stahl, Andrew M. John, Mandell & Ginsberg, Madison, Wis., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS and POSNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant Angel Rodriguez–Luna pleaded guilty in October 1989 to one count of possessing one kilogram of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Had Rodriguez[1] been sentenced on the basis of the one kilogram charged in the indictment, he would have received a maximum sentence of 9 years. Instead, the district judge found that Rodriguez had engaged in a course of conduct involving 50 kilograms of cocaine and sentenced him to 240 months in prison. Finding Rodriguez' challenges to his sentence and the validity of his plea to be without merit, we affirm.

## I.

Jose Gonzalez led the authorities to defendant Rodriguez. In August 1989 Gonzalez was arrested on a Greyhound bus in Fort Lauderdale, Florida, after he consented to a search of his gym bag that yielded ten kilograms of 91 percent pure cocaine.

The day after his arrest, Gonzalez volunteered to make a statement. He said that he worked for Angel Rodriguez–Luna. Gonzalez claimed that he had made six or seven trips to New York and Florida since November 1988 to purchase cocaine for delivery to Rodriguez in Waukegan, Illinois. Each trip prior to his last had involved six to eight kilograms of cocaine.

Gonzalez also stated that he had been with Rodriguez in Miami, Florida, the day before his own arrest. The two of them had purchased the ten kilograms found in his gym bag from a group of Colombian men for $140,000 in cash. Rodriguez had then dropped Gonzalez off at the bus station and taken a plane to Illinois.

After Gonzalez made his statement, the authorities returned him to Illinois where he agreed to assist in Rodriguez' arrest. A video camera and tape recorders were placed in Gonzalez' home in Waukegan. When Rodriguez arrived and asked for one kilogram of cocaine, the police arrested him.

Rodriguez pleaded guilty to the indictment charging him with possessing one kilogram of cocaine with intent to distribute on October 6, 1990. At the plea hearing, the prosecutor stated that the government planned to present evidence at sentencing establishing that defendant had possessed and intended to distribute additional quantities of drugs. United States Sentencing Guidelines § 1B1.3(a)(2) mandates that quantities of drugs be cumulated when determining the base offense level if those quantities are part "of the same course of conduct or common scheme or plan as the offense of conviction," regardless of whether defendant was convicted of offenses relating to those drugs. See *United States v. White*, 888 F.2d 490 (7th Cir.1989).[2]

---

1. We abbreviate defendant's last name because both the defendant's lawyer and the defendant himself, in a *pro se* brief, have done so. However, we note from the *pro se* filing that defendant consistently types his name as "Rodriquez," with a "q." We have been unable to determine the proper spelling of defendant's last name. If it is indeed "Rodriquez–Luna" the defendant's

lawyer should move to amend this judgment and the judgment below.

2. U.S.S.G. § 1B1.3(a)(2) requires that "[S]olely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction

The sentencing hearing commenced on March 29, 1990, and continued on April 11, April 13, and April 16. The Presentence Investigation Report (PSI) had recommended that Rodriguez be sentenced on the basis of 50 kilograms, and on February 21, 1990, Rodriguez filed objections to that report, arguing *inter alia* that the consideration of additional amounts of cocaine infringed his due process rights and that the introduction of any hearsay evidence was impermissible. The district judge deferred ruling on the objections until after evidence was taken. He then heard testimony from a Florida police officer about Gonzalez' arrest and his subsequent statement. The government played a tape of Gonzalez' statement to the Florida police and the videotape made in Waukegan of Rodriguez' arrest. Rodriguez, in his defense, subpoenaed Gonzalez to testify, but Gonzalez refused to answer questions even after being immunized from prosecution.

Rodriguez was sentenced on April 16, 1990. By that date, the presentence report had been revised to reflect Rodriguez' objections. The district judge had overruled those objections. Before sentencing Rodriguez, the judge stated that the evidence presented by the government was reliable and proved by a preponderance of the evidence that the relevant conduct for sentencing purposes was the 50-kilogram figure recommended in the presentence report. The base offense level for a violation involving 15–50 kilograms of cocaine is 34. U.S.S.G. § 2D1.1(c). The level was adjusted upwards 2 points because Rodriguez played a supervisory role in the offense. See U.S.S.G. § 3B1.1(c). Because Rodriguez' Criminal History Category was II, his sentencing range was 210–262 months.

The district judge sentenced him in the middle of the range to 240 months in prison. Rodriguez would have been sentenced in the 87–108 month range if the one-kilogram figure had been used, all other factors being the same.

On appeal, Rodriguez objects to his sentence and also the validity of his plea. We address below the arguments deserving attention.[3] These include contentions: 1) that the evidence presented at the sentencing hearing was insufficient to support a finding that Rodriguez had possessed additional quantities of cocaine as part of a common scheme; 2) that the district court failed to question Rodriguez about whether he had read the presentence report, as required by Fed.R.Crim.P. 32(a)(1)(A), and failed to attach to the report a record of his disposition of Rodriguez' objections, as required by Fed.R.Crim.P. 32(c)(3)(D); and 3) that Rodriguez' plea was not voluntary because he received ineffective assistance of counsel at the plea bargaining stage.

## II.

### A. Sufficiency of the evidence

Rodriguez' best argument is that the evidence introduced at the sentencing hearing was insufficient to support a finding that the 50 kilograms of cocaine were part of the same course of conduct. The government's theory was that Rodriguez was the boss who had employed Gonzalez to make a set of trips commencing in November 1988. Rodriguez contended that he was merely a small-time operator whom Gonzalez had fingered in a desperate bid to receive lenient treatment from the authorities. Rodriguez' theory was supported mainly by the evidence that he had only asked for one

[shall be considered in determining the base offense level]."

Section 3D1.2(d) in turn provides that: "[C]ounts are grouped together if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

**3.** Rodriguez contends at the outset that U.S.S.G. § 1B1.3(a)(2) exceeds what is authorized by the

Sentencing Guidelines enabling legislation, 28 U.S.C. § 994(*l*), and that Section 1B1.3(a)(2) is unconstitutional because it denies defendants due process. These questions were answered in *United States v. Ebbole*, 917 F.2d 1495, 1501 (7th Cir.1990) (statutes cannot fairly be read to preclude adoption of § 1B1.3), and *United States v. Ross*, 905 F.2d 1050, 1054 (7th Cir.1990) (due process satisfied so long as guidelines factors proven by preponderance of the evidence), certiorari denied, —— U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 136.

kilogram of cocaine from Gonzalez on the day he was arrested.

■ After hearing all the evidence,[4] the district judge accepted the government's theory of one prolonged common plan masterminded by Rodriguez, stating that "the * * * amount and purity of the narcotics involved indicates that this is not a random transaction" (Sent.Tr. 178). His finding was not clearly erroneous given the evidence that was introduced. See *United States v. Durrive*, 902 F.2d 1221, 1230 (7th Cir.1990).

■ As the judge stated, the amount and purity of the drugs seized from Gonzalez tended to support a view that the authorities had stumbled upon a large-scale operation. Gonzalez was the key to discerning Rodriguez' role in that operation, and the government introduced evidence corroborating Gonzalez' version of events. For example, Gonzalez said in his taped statement that he used a Ford Thunderbird to transport cocaine to Waukegan for his first trip in November 1988, but that Rodriguez directed him to use buses thereafter because the Thunderbird had been seized in New Jersey or New York. At the sentencing hearing, a New Jersey state trooper testified that he had seized a Ford Thunderbird in December 1988 occupied by Luis Ballardo Oaspina and Jorge Montoya after finding $373,000 in cash stowed in the car. Oaspina claimed to be from Waukegan. A driving permit found in the car identified the car's purchaser as Nora Luna Korea. The government introduced a passport application completed by Rodriguez and found in his home, naming Rodriguez' mother as a Nora Luna. Other evidence tending to support Gonzalez' claim that Rodriguez was a large-scale buyer and dealer included: a reservation confirmation seized from Rodriguez' home for Rodriguez to travel to Medellin, Colombia, for

fifteen days in February 1988; statements made by Rodriguez' girlfriend to police that Rodriguez used her apartment to store and sell drugs, and wire transfer receipts for money transfers of thousands of dollars from Rodriguez' girlfriend to various people, including Rodriguez, in Miami.

The judge resolved the critical issue of Gonzalez' credibility ultimately by crediting Gonzalez' statement and rejecting Rodriguez' claim that his role had been greatly exaggerated. The court specifically found the government's evidence to be reliable and adequate to support a conclusion that Rodriguez had engaged in a common course of conduct to distribute 50 kilograms of cocaine. Though the evidence was not overwhelming, we agree with the district judge's assessment of its adequacy and decline to vacate the sentence on grounds of insufficiency of the evidence.

### B. District Court's Compliance with Fed.R.Crim.P. 32

■ Rodriguez contends that he must be resentenced because the district judge failed to comply with either Fed.R.Crim.P. 32(a)(1)(A) or 32(c)(3)(D). Rule 32(a)(1)(A) requires a sentencing court to "[d]etermine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report." We held in *United States v. Rone*, 743 F.2d 1169, 1174 (7th Cir.1984), that the rule requires the judge at sentencing to ask the defendant three questions: 1) whether the defendant has had an opportunity to read the PSI; 2) whether the defendant and defense counsel have discussed it; and 3) whether the defendant wishes to challenge any facts contained in the PSI. When a defendant alleges inaccuracies in his or her sentencing report, either in response to *Rone* questioning or *sua sponte*, Rule

---

**4.** Rodriguez takes issue with the admission of hearsay testimony at the sentencing hearing. Hearsay is admissible at sentencing so long as it is reliable and defendant has a reasonable opportunity to rebut the contested hearsay testimony. *United States v. Agyemang*, 876 F.2d 1264, 1272 (7th Cir.1989). Rodriguez' attorney cross-examined all witnesses and was able to advance his theory that Gonzalez' statement was self-serving and that Rodriguez was in reality Gonzalez' victim. Also, the district judge made the requisite finding of reliability and there is nothing in the record to indicate that he abused his discretion in doing so. See *Agyemang*, 876 F.2d at 1272.

32(c)(3)(D) is triggered.[5] The rule requires that the judge either record the disposition of the dispute or make a written determination that the disputed matter will not be relied upon in sentencing. These findings are to be attached to the sentencing report.

■ With respect to Rule 32(a)(1)(A), Rodriguez correctly points out that the district judge failed to ask him the questions set forth in *Rone*. We deplore this failing and again exhort sentencing courts to carry out this brief questioning in the interest of "focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence." *Burns v. United States*, —— U.S. ——, ——, 111 S.Ct. 2182, 2183, 115 L.Ed.2d 123 (U.S.1991) (discussing purpose of Rule 32); see also *Rone*, 743 F.2d at 1171 (purpose of Rule 32 is to protect defendant's right to be sentenced on the basis of accurate information).

Nonetheless resentencing is not warranted here because, unlike *Rone* itself, defendant's right to a fair sentencing process was not compromised. In *Rone*, the defendant alleged that he was deprived of his chance to challenge the accuracy of the drug quantity figures contained in his PSI because he had never read his PSI or discussed it with counsel. The judge, after neglecting to ask defendant whether he had objections to the PSI, relied in part on the drug quantity figures recommended therein in imposing Rone's sentence. We ordered resentencing to allow the defendant to challenge the reliability of the PSI. In this case, Rodriguez does not identify any fact he was prevented from disputing below because of the judge's failure to pose the *Rone* questions. Rodriguez does not even claim that he never read the report or discussed it with his lawyer. The only meaningful dispute at Rodriguez' sentencing involved the proper quantity of cocaine to consider. Rodriguez' attorney had filed the objection to the 50–kilogram figure in his PSI a full month before the March 29, 1990, sentencing hearing began.

In the absence of any allegation that Rodriguez did not review the PSI and any identification of the facts that Rodriguez would have disputed had he been given the opportunity, we decline to order Rodriguez to be resentenced. See *United States v. Brown*, 785 F.2d 587, 592 (7th Cir.1986) (remand not necessary after Rule 32(a)(1)(A) violation if defendant had ample opportunity to comment concerning only objection).

■ Rodriguez also complains that the district judge did not write or attach his disposition of factual disputes[6] to the PSI as required by Rule 32(c)(3)(D). Again, resentencing is unnecessary. In *United States v. Eschweiler*, 782 F.2d 1385 (7th Cir.1986), we held that Rule 32(c)(3)(D) serves two purposes: protecting a defendant's due process right to be sentenced on the basis of accurate information and providing a clear record of the disposition and resolution of controverted facts in the PSI for appellate courts and administrative agencies which may subsequently use the PSI. *Id.* at 1387. In this case, defendant's due process rights are not implicated because the district judge clearly made a finding as to the disposition of the dispute about the relevant quantity of cocaine.

---

5. Rule 32(c)(3)(D) provides: "If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report * * *, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission."

6. Part of Rodriguez' argument seems to be that his precise objections to the government's testimony were not carefully recorded (Sent.Tr. 157–158). Rule 32(c)(3)(D) does not require a complete record of the grounds for each lawyer's objections, however. It encompasses instead the facts to which defendant objects. The only significant fact dispute in this case involved the additional 49 kilograms used to calculate the base offense level. Defendant's dissatisfaction with the use of the 50–kilogram figure was noted in the revised PSI received by defendant on April 16, 1990, in court (Sent.Tr. 156).

See *id.* at 1389 (to be resentenced, defendant must demonstrate that court failed to make findings regarding the controverted matters); *Andrews v. United States*, 817 F.2d 1277 (7th Cir.1987) (judge complied with Rule 32(c)(3)(D) by making finding on record), certiorari denied, 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120. He accepted the PSI recommendation of 50 kilograms and gave reasons for his decision (Sent.Tr. 178). The judge did fail to attach a written version of his findings to the PSI. We direct appellee to ensure that this is done, but remand is unnecessary. See *United States v. Busche*, 915 F.2d 1150, 1152 (7th Cir. 1990) (directing attachment of sentencing transcript but affirming sentence); *United States v. Moran*, 845 F.2d 135, 139 (7th Cir.1988) (attachment is ministerial matter to which U.S. Attorney's office can attend). We also take this opportunity to remind courts that strict compliance with Rule 32(c)(3)(D) is not discretionary but mandatory.

### C. Voluntariness of Plea

Rodriguez' final argument is that his plea was not voluntary because he was deprived of the effective assistance of counsel. Of course, to be valid, a guilty plea must be both knowing and voluntary. *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

When Rodriguez entered his plea, the district judge engaged in the colloquy mandated by Fed.R.Crim.P. 11, the purpose of which is to establish that a plea is knowingly and voluntarily made. See *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987). Rodriguez stated that he was willing to give up his right to a trial, and that his plea was not the consequence of promises, threats, or coercion. The prosecutor responded that the government intended to introduce evidence that Rodriguez had possessed and intended to distribute additional quantities of drugs. The prosecutor expected the evidence to be "directly relevant to * * * what the applicable level [for sentencing] will be" (Plea Tr. 9). The judge then asked the defendant if he understood the prosecutor's statement, and Rodriguez said, "Yes, sir" (Plea Tr. 9). Finally the judge asked if Rodriguez understood that the mandatory minimum under the statute for the charged crime was five years and that the maximum was forty years of imprisonment. Rodriguez again responded, "Yes, sir" (Plea Tr. 10).

Rodriguez attacks the strong presumption of veracity usually accorded such declarations, see *Politte v. United States*, 852 F.2d 924, 931 (7th Cir.1988), by alleging that his attorney incompetently advised him to plead guilty. He states that his attorney advised him: "I would receive a sentence of five years, and I would only be sentenced based upon the activity for which I pled guilty" (Def.Supp.Br. 2). He also states, "if it wasn't for his deception I would never have pled guilty" (Def. Supp.Br. 2).

When a defendant claims that his plea was involuntary because of ineffective assistance of counsel, the relevant test is whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985), quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). If counsel's performance was indeed deficient, the defendant must yet demonstrate that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

Rodriguez' claim fails at the threshold because mere allegations of promises made by counsel are insufficient to support a claim of ineffective assistance. See *Key v. United States*, 806 F.2d 133, 139 (7th Cir.1986). Rodriguez has decided to raise his claim of ineffective assistance of counsel on direct appeal, meaning that for Rodriguez to prevail, the "unadorned trial record" must reveal the counsel's shortcomings. See *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir.1991). In this case the record reveals nothing about Rodriguez' attorney predicting a five-year sentence or assuring Rodriguez that he would only be sentenced on the basis of

one kilogram of cocaine. Only Rodriguez' unsupported claims counterbalance his statements in open court that he understood the consequences of his plea. This Court has held that:

a defendant must do more than merely allege a promise by counsel; he or she must provide some evidence that allows the court to meaningfully assess his or her claim. A defendant in such a situation might allege, in addition to alleging the *Hill* requirements, what the terms of the alleged promises by counsel were; when, where, and by whom such promises were made; and the precise identity of any witnesses to the promise.

*Key,* 806 F.2d at 139. The concern is to separate the cases in which attorneys truly were derelict from cases in which their clients may be attempting "to belatedly avoid the consequences of a voluntary plea of guilty." *Key,* 806 F.2d at 135. Rodriguez has failed to supply evidence to help a court begin this inquiry.[7]

Even if it is assumed that Rodriguez' lawyer rendered ineffective assistance, Rodriguez cannot prevail because he cannot establish that but for counsel's errors, the result of the proceeding would have been different. *Hill,* 474 U.S. at 57, 106 S.Ct. at 369. Rodriguez claims that he would not have pleaded guilty in the absence of counsel's promise. But if Rodriguez had proceeded to trial for the charged conduct, he would only have delayed the sentencing process of which he now complains without changing the result. The evidence with respect to the one kilogram was overwhelming. Rodriguez was videotaped at Gonzalez' house asking for a one-kilogram package that contained 91 percent pure cocaine. The violation of 28 U.S.C. § 841(a)(1) was clear. Once Rodriguez had been found guilty at trial of possessing the one kilogram, the sentencing would have proceeded exactly as it actually did. Rodriguez would have been sentenced under the Guidelines on the basis of all quantities found to be part of the same course of conduct by a preponderance of the evidence.

When the evidence tending to prove the charged conduct is equivocal, a lawyer's exhortation to plead guilty may indeed prejudice a defendant who faces sentencing on the basis of additional quantities of drugs. The Guidelines have radically altered the playing field on which the plea bargaining game is played. A defendant who has some chance of prevailing at trial and will possibly be sentenced for uncharged conduct if he or she loses has no incentive under the Guidelines to plead guilty. Once the plea is entered, the government can force an increase in the base offense level merely by proving related conduct and additional drug quantities by a preponderance of the evidence. See *United States v. Eske,* 925 F.2d 205, 208 (7th Cir.1991) (Cudahy, J., concurring) ("Faced with the prospect of being sentenced for uncharged offenses that may result not in a marginal enhancement of a sentence but in a higher base offense level, what rational defendant would choose to plead?"). A defendant in this dilemma has the right to an attorney who recognizes that U.S.S.G. § 1B1.3(a)(2) may make pleading guilty as unattractive an option as proceeding to trial. A statement made in this context that only charged conduct can ever be punished could amount to ineffective assistance of counsel.[8]

---

7. As we noted in *Taglia,* it is in postconviction proceedings that the defendant can and should introduce supporting evidence such as affidavits obtained from his or her former attorney. 922 F.2d at 417.

8. The government argues that the type of comment allegedly made to Rodriguez can never suffice to establish an ineffective assistance of counsel claim because we have held that a "mere inaccurate prediction does not amount to ineffective assistance of counsel." *United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990).

This view is mistaken. A lawyer who advises his or her client that only charged conduct can be punished is not "mistaken as to the facts or as to what a court's judgment might be on given facts." *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (discussing uncertainty inherent in making decision to plead guilty and limits of lawyer's obligation to evaluate risk). He or she would be misstating a proposition of law that has been clear in this Circuit since 1989. See *United States v. White,* 888 F.2d 490 (7th Cir.1989).

This case, fortunately, is simpler than the hypothetical case just envisioned. Rodriguez did not produce any evidence tending to show that his attorney ever made promises or predictions. Also, here the rational defendant might yet have pleaded guilty even in the absence of counsel's representations, for the evidence proving the charged conduct was sufficient to ensure that no advantage would be gained by proceeding to trial. For all the foregoing reasons, we affirm the judgment of the district court.