**UNITED STATES of America, Plaintiff,**

v.

**Gustavo HERRERA–VALDEZ, Defendant.**

**Nos. 95 C 7272, 92 CR 1004–4.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 13, 1996.

Gustavo Herrera, Pro Se.

Duane J. Deskins, Assistant United States Attorney, Chicago, IL, for the U.S.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

By reason of the announced retirement of this Court's colleague Honorable Brian Barnett Duff under 28 U.S.C. § 372(a), this 28 U.S.C. § 2255 ("Section 2255") motion (the "Motion") brought by Gustavo Herrera–Valdez ("Herrera"[1]) has recently been reassigned to this Court's calendar. In the Mo-

tion Herrera seeks to vacate the 70–month sentence that he is now serving following his guilty plea to a narcotics conspiracy charge.

This Court has reviewed the relevant papers: Herrera's self-prepared Motion in which he asserts the constitutional inadequacy of the representation that he received from his counsel,[2] the Government's Opposition to Defendant's Section 2255 Motion accompanied by relevant transcripts and other exhibits, and most recently Herrera's brief Response to the United States' submission. For the reasons stated here, the motion is denied and this action is dismissed summarily.

### Background

After Herrera and Graham had negotiated a plea agreement with Assistant United States Attorney Phillip Guentert ("Guentert"), on June 25, 1993 Herrera and his three codefendants pleaded guilty before another of this Court's colleagues, Honorable Wayne Andersen (Judge Duff was unavailable on that day to take the plea), to the conspiracy charged in Count One of the indictment. On September 27, 1993 Judge Duff began, and on November 3, 1993 he completed, the sentencing hearing involving Herrera (among other codefendants). Herrera's sentence of 70 months in the custody of the Bureau of Prisons was imposed in light of Judge Duff's having rejected the "minor participant" characterization that had been jointly recommended by Herrera's lawyer Graham and government attorney Guentert (a recommendation that would have caused a two-level reduction in the Sentencing Guidelines ("Guidelines") calculation under Guideline § 3B1.2(b)). Instead Judge Duff concurred with the Probation Officer's calculation to the contrary, which placed the 70–month sentence within the Guideline range.

---

1. Even though the case caption necessarily conforms to the designation of Herrera's name in the original indictment, and although some of the transcripts referred to later in this opinion reflect other variants in usage (not an unusual occurrence with names of Hispanic origin), this opinion will adhere to the manner in which defendant has signed both the Section 2255 mo-

tion and his later supplemental filing: simply "Herrera."

2. James Graham ("Graham") represented Herrera both in the trial court and in the handling of his unsuccessful appeal, *United States v. Herrera–Valdez*, No. 93–3778 (an unpublished opinion referred to at 28 F.3d 1216 (7th Cir.1994)).

### Herrera's Criminal Activity and Plea Agreement

Every federal judge tends to develop his or her own practice in implementing the Fed.R.Crim.P. ("Rule") 11 provisions that prescribe how a guilty plea is to be taken. Although both Rule 11 and the Bench Book for United States District Judges set out detailed requirements and recommendations in that respect, some variations in language and even some minor variants in the exact procedure that different judges follow are not at all unusual.

In this instance the June 25, 1993 guilty plea proceeding (cited "June 25 Tr.—") reflects Judge Andersen's meticulous adherence to Rule 11, including most particularly for present purposes his obtaining Herrera's confirmation of his own understanding of the non-binding nature of the lawyers' tentative calculation and of their joint recommendation of the applicable Guideline figures. But before any aspect of that part of the June 25 proceeding is reproduced here, it is highly relevant to look at another portion of that proceeding, Judge Andersen's compliance with Rule 11(f):

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

In that regard Judge Andersen's procedure apparently differs from the one that this Court follows in its own criminal cases. At that stage of the proceedings this Court always asks a defendant to describe in his or her own words just what he or she had done in the respect covered by the previously-identified criminal charge. This Court does so in part to make certain that the factual recital included in the written plea agreement (a recital that is invariably principally prepared by the lawyers) does not, despite the defendant's having affixed his or her signature to that agreement, differ from what the defendant is actually prepared to acknowledge.

In this instance June 25 Tr. 25–36 shows that Judge Andersen adopted a somewhat different approach with the same Rule 11(f) goal in mind: What he did was to repeat the factual version as it was set out in the plea agreement and then to ask Herrera whether or not it was accurate. And it is clear that Herrera's responses to that line of inquiry effectively serve to undercut his present claim, in which he seeks to portray himself as a stranger in a strange land, misled by his lawyer, confused as to the proceedings and not effectively assisted by the able court interpreter Kevin DeVany (Herrera's primary language is Spanish, and although the record is not complete on this score Herrera will be given the benefit of the most favorable assumption that he possesses no English at all).

Instead, Herrera's keen awareness and full understanding of the matters then under discussion were expressly evidenced by his own meticulous pointing out that certain specific recitals contained in the plea agreement's factual account were really inaccurate. That degree of careful attention, coupled with Herrera's care in specifying any such errors, led not only to the correction of those mistaken items but also to Judge Andersen's commenting not once but twice on Herrera's obvious alertness and comprehension (June 25 Tr. 33 and 43–44):

> THE COURT: Okay. I want to just observe for the record that Mr. Herrera has a very good attention, perhaps better than some of the lawyers and judges in the room.

> \*       \*       \*       \*       \*       \*

> THE COURT: Based on that as well as his—my observation that this defendant is exceptionally alert and intelligent, and I think he knows what he is doing, I will accept the pleading of guilty.

Both of those comments and the entire colloquy of which they formed a part plainly served to confirm Herrera's guilt of the substantive charge against him. But most importantly for the present Section 2255 motion, Judge Andersen's observations also make doubly significant the portion of the guilty plea in which Judge Andersen dealt with the subject of the Guidelines and the calculations that had tentatively been agreed upon between Herrera's counsel Graham and

prosecutor Guentert (June 25 Tr. 36–38), followed by this exchange (June 25 Tr. 38–40):

THE COURT: Okay. Do you and your attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of the agreement?

Do you understand that the probation department will conduct its own investigation, and that the Court will ultimately determine the facts and law relevant to sentencing, and that the Court's determinations govern the final sentence and guidelines calculation?

And, accordingly, the validity of this agreement is not contingent upon the probation officer's or the Court's concurrence with these calculations.

Do you understand all that?

DEFENDANT HERRERA–VALDEZ: Yes.

MR. MICHELS:[3] Again, Judge, just for the record, we should—as Mr. Breen pointed out with respect to his client, Mr. Herrera should be aware that it's Judge Duff who holds the ultimate determination as to his sentence in this case.

THE COURT: You understand that Judge Duff will be the sentencing judge, that I will not be the sentencing judge.

DEFENDANT HERRERA–VALDEZ: Yes, I do.

THE COURT: You understand that errors in calculation or interpretation of any of the guidelines may be corrected or amended by either party prior to sentencing, that you may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or Court setting forth the disagreement as to the correct guidelines and their application.

The validity of this agreement will not be affected by such corrections or amendments, and you will not have a right to withdraw your plea on the basis of such corrections or amendments.

Do you understand that?

DEFENDANT HERRERA–VALDEZ: Yes, sir.

### Section 2255 Claims

As Herrera would now have it (what follows are the three ineffective-assistance-of-counsel assertions that he advances in Motion ¶ 12A, B and C):

A. Ground One: Petitioner relied on counsel's oral promises, that if petitioner waived the right to trial by jury, that the government guaranteed a 60 month sentence.

B. Ground Two: Lawyer forced petitioner to sign the plea agreement, based on the promise that the government guaranteed a 5 year sentence if petitioner would sign and waive the right to trial. (Even tho the agreement stated that the court is not committed.)

C. Ground Three: Counsel knew that petitioner does not write nor read english. Counsel through an interpreter promised that if petitioner would sign the plea agreement, and waive the right to trial, go with the program, and answer yes to all the questions under rule 11, that the prosecutor guaranteed 60 months.

All of those contentions must be and are rejected without any need to conduct an evidentiary hearing.

■ It is of course entirely proper for Herrera to have raised such arguments, which rely on matters dehors the record, via a Section 2255 motion rather than in his direct appeal. That is the teaching of a host of cases from our Court of Appeals, including for example *McCleese v. United States,* 75 F.3d 1174, 1178 (7th Cir.1996) (most citations omitted):

This circuit, as well as many of our sister circuits, has held that most claims of ineffective assistance of trial counsel are properly raised for the first time in a § 2255 motion rather than on direct appeal. As we discussed in *Bond* [*v. United States,* 1 F.3d 631, 634 (7th Cir.1993) ], the justification for allowing claims of ineffective assistance of counsel to be raised for the first

**3.** Both Guentert and his associate prosecutor, Assistant United States Attorney Robert Michels, appeared before Judge Andersen on June 25, 1993.

time in § 2255 motions is that, in order to be successful, such claims generally require that the record be supplemented with "extrinsic evidence that illuminates the attorney's errors." 1 F.3d at 635. A § 2255 proceeding offers defendants the opportunity to supplement the record with additional evidence. If we required defendants to raise all such claims on direct appeal, we would be limited to only the trial record. Another, unrelated circumstance that justifies raising a claim of ineffective assistance of trial counsel for the first time in a § 2255 motion is where trial counsel was also appellate counsel because he "can hardly be expected to challenge on appeal his own ineffectiveness at trial."

██ But that is as far as the propriety of Herrera's claims goes. In terms of all three of his contentions (each of which asserts that he relied on promises and representations assertedly made to him by Graham), *United States v. Rodriguez–Luna*, 937 F.2d 1208, 1214–15 (7th Cir.1991) applies with equal force here:[4]

> Rodriguez' claim fails at the threshold because mere allegations of promises made by counsel are insufficient to support a claim of ineffective assistance. See *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986). Rodriguez has decided to raise his claim of ineffective assistance of counsel on direct appeal, meaning that for Rodriguez to prevail, the "unadorned trial record" must reveal the counsel's shortcomings. See *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir.1991). In this case the record reveals nothing about Rodriguez' attorney predicting a five-year sentence or assuring Rodriguez that he would only be sentenced on the basis of one kilogram of cocaine. Only Rodriguez' unsupported claims counterbalance his statements in open court that he understood the consequences of his plea. The Court has held that:
>
> > a defendant must do more than merely allege a promise by counsel; he or she must provide some evidence that allows the court to meaningfully assess his or

her claim. A defendant in such a situation might allege, in addition to alleging the *Hill* requirements, what the terms of the alleged promises by counsel were; when, where, and by whom such promises were made; and the precise identity of any witnesses to the promise.

*Key*, 806 F.2d at 139. The concern is to separate the cases in which attorneys truly were derelict from cases in which their clients may be attempting "to belatedly avoid the consequences of a voluntary plea of guilty." *Key*, 806 F.2d at 135. Rodriguez has failed to supply evidence to help a court begin this inquiry.[7]

---

[7] As we noted in *Taglia*, it is in postconviction proceedings that the defendant can and should introduce supporting evidence such as affidavits obtained from his or her former attorney. 922 F.2d at 417.

In an attempt to respond to the government's invocation of *Rodriguez–Luna* and like cases, Herrera's most recent filing—his Response at 2—asserts his inability to adduce any evidence other than his own unsupported claim as to Graham's alleged representations that led him down the garden path:

> This is not possible as a matter of course, as the conversations between client and council are privileged. This expectation leads to lack of documentation such as recording or transcription of meetings or other verbal communications. Even if the Defendant wished to bring such evidence, he could not. The fact that the Defendant speaks almost no English should stand for much toward the support of the allegation that the Defendant was not properly informed and did not understand the consequences of the Plea.

Herrera's reference to the attorney-client privilege is puzzling at best, for he cannot of course simultaneously complain about what the attorney assertedly told him while at the same time he fails to bring those statements forward. And as for the rest of what Herrera now says, it amounts to nothing more

---

**4.** Although the defendant in *Rodriguez–Luna* (unlike Herrera) chose to raise his ineffective-assistance claim on direct appeal, the quotation that follows in the text here expressly addresses what a defendant must do in the present Section 2255 context as well.

than an attempted bootstrapping of his own unsupported assertions.

But even were that not the case, the record here, when viewed together with the relevant case law, squarely defeats Herrera's current attempt to overturn his sentence. Although the precise nature of the ineffective-assistance claim that was addressed in the Section 2255 proceeding in *Barker v. United States,* 7 F.3d 629 (7th Cir.1993) differed somewhat from Herrera's, what our Court of Appeals said there might well have been written for this case (*id.* at 633–34 (citation omitted)):

> In this case, even if advice from Mr. Barker's trial attorney had led to his misunderstanding of the consequences of his guilty plea, any such confusion was cured by the trial court. The court conducted a thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on Mr. Barker's part before the plea was accepted. Furthermore, Mr. Barker admitted that he understood the consequences. Thus the record reflects that Mr. Barker's guilty plea was voluntary and was made with full knowledge of its consequences. Our review of the record convinces us that Mr. Barker has failed to establish that any misinformation by his attorney constituted ineffective assistance and that, but for such misinformation, he would not have pleaded guilty.

Judge Andersen's detailed inquiries and Herrera's own answers similarly confirm beyond dispute that Herrera was listening carefully and with full understanding, aided by this District Court's extremely able official Spanish-to-English and English-to-Spanish interpreter DeVany.

Although he is obviously distressed by Judge Duff's later having rejected what Herrera's lawyer Graham and the government counsel had recommended and what Herrera's lawyer attempted to urge with commendable vigor (abetted by prosecutor Guentert), Herrera cannot convert that judge-ordered rejection, by some sort of al-

chemy, into any constitutionally inadequate representation by Graham.[5] Herrera's present assertion is directly belied by his informed acknowledgements before Judge Andersen. And under these circumstances, no evidentiary hearing is required (*Barker, id.* at 633 n. 3 and cases cited there, including *Key,* 806 F.2d at 137), and a summary dismissal of the Motion is appropriate (*id.*).

### Conclusion

Because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court" (Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts), there is no need for an evidentiary hearing (Section 2254 Rule 8(a)). Accordingly this Court is entitled to "make such disposition of the motion as justice dictates" (*id.*), which in this instance calls for its summary dismissal (Section 2254 Rule 4(b)). This Court so orders.

---

**5.** As Judge Andersen had expressly warned Herrera, the final call on the Guidelines calculation and the actual sentence imposed would be Judge Duff's (absent some error correctible on appeal). And in this instance Judge Duff's reading of the circumstances and his consequent determinations of the Guidelines figures and of the appropriate sentence were unquestionably permissible.