101 F.3d 704
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Hardy RIVERA, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee,
 No. 96-1500.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 4, 1996.
Decided Nov. 14, 1996.
 
 Before POSNER, Chief Judge, and BAUER and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 For the reasons stated in the excellent opinion of the District Court, that judgment is affirmed.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF INDIANA
 HAMMOND DIVISION
 
 2
 Hardy Rivera, Plaintiff,
 
 
 3
 vs.
 
 
 4
 United States of America, Defendant.
 
 No. 2:95-CV-203-RL
 
 5
 Dec. 22, 1995.
 
 ORDER
 
 6
 This matter is before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody filed by Plaintiff/Movant, Hardy Rivera, on June 7, 1995. For the reasons set forth below, the motion is DENIED.
 
 BACKGROUND
 
 7
 In a one-count information filed in this Court on March 27, 1990, Rivera was charged with conspiring to distribute over one kilogram of heroin in violation of 21 U.S.C. section 846. Rivera and the co-conspirators came to be known as the "Balloon People" because they packaged drugs in balloons. Rivera pled guilty, and the Court sentenced him to sixty-five years in prison. In his present pro se motion under 28 U.S.C. section 2255, Rivera argues double jeopardy, illegal sentence, and ineffective assistance of counsel.
 
 
 8
 The relevant history of Rivera's case is as follows. A plea agreement signed by Rivera and his lawyer was filed on the same day as the information. In the plea agreement, Rivera agreed to plea guilty to the information--which charged a conspiracy dating from 1982 to October 1987--in exchange for the Government dismissing an earlier indictment. (Information; Plea Pet. p 9(a) & (b))[1] Rivera acknowledged that "under the terms of [the] plea agreement," he could "receive a sentence ranging from probation to life imprisonment." (Plea Pet. p 9(d); United States v. Vasquez, 966 F.2d 254, 257 (7th Cir.1992). Rivera agreed that in addition to any sentence or other penalty the Court imposed, he would forfeit approximately $58,000 in cash seized from his house, jewelry valued at around $20,000, and an additional $300,000 in cash. (Plea Pet. p 9(e)) He stated that "no promises have been made to me other than those contained in this petition, nor have I been threatened in any way by anyone to cause me to plead GUILTY in accordance with this petition." (Plea Pet. p 12)
 
 
 9
 At the entry of plea hearing on March 27, 1990, the Government, the Court, and Rivera (testifying under oath) reaffirmed that Rivera understood that his potential sentence under the plea agreement ranged from probation to life, and that no one had promised or predicted a precise sentence or anything else regarding his sentence. (Tr. 18-19, 27-28, 34-36, 38-39) Rivera also stated that the Balloon People conspiracy definitely distributed more than one kilogram of heroin and might have distributed up to ten kilograms. (Tr. 45-46) He said the conspiracy lasted through at least October 1987 and probably into early 1988. (Tr. 44-45) The AUSA described in substantial detail how Rivera had been involved in a heroin distribution conspiracy that began with small, street-level dealing in Chicago in the early 1980's and by the late 1980's grew into a large and sophisticated network that covered Northwest Indiana as well as South Chicago with a "heroin hotline" phone system, and ever-changing variety of street-level distribution points, and a list of screened customers. (Tr. 46-54)
 
 
 10
 Roughly five months after the plea hearing, on August 24, 1990, the Court accepted the plea agreement and sentenced Rivera. (Ord. 8/24/90) On the same day, a stipulation of forfeiture signed by Rivera and his attorney was filed, and an order of forfeiture was signed by the Court and filed. The stipulation referred to the forfeiture provisions of the plea agreement. Rivera stipulated that currency and jewelry valued roughly the same as those mentioned in the plea agreement were proceeds from his violation of 21 U.S.C. section 846. Rivera stipulated to forfeiting all rights to the currency and jewelry pursuant to the criminal forfeiture provision found at 21 U.S.C. section 853, which generally requires convicted narcotics defendants to forfeit criminal proceeds in addition to their sentence. The Court's order of forfeiture required Rivera to forfeit the currency and jewelry.
 
 
 11
 Rivera appealed his sentence. The Seventh Circuit affirmed. Vasquez, 966 F.2d at 257-59.
 
 
 12
 Against this backdrop, Rivera alleges that the combination of his sentence and the forfeiture violated double jeopardy principles, that the sixty-five year sentence was illegal, and that his trial and appellate counsel provided ineffective assistance. The Government has not argued procedural default, nor that the issues Rivera raises in his motion were decided on appeal, nor that the Court should not address the merits of Rivera's motion for any other reason. See Belford v. United States, 975 F.2d 310, 313 (7th Cir.1992) (listing the three types of claims that a defendant cannot raise in a section 2255 motion) ( overruled on other grounds, Castellanos v. United States, 26 F.3d 717 (7th Cir.1994)).[2]
 
 DISCUSSION
 Double Jeopardy
 
 13
 The Fifth Amendment's Double Jeopardy Clause protects criminal defendants from three types of abusive prosecution: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989); United States v. Penny, 60 F.3d 1257, 1261-62 (7th Cir.1995). Rivera seizes on the third prohibition, arguing that he received multiple punishments because his sentence and forfeiture were imposed in separate proceedings.
 
 
 14
 Rivera attempts to analogize his case to cases involving separate criminal and civil forfeiture proceedings. Indeed, a "defendant convicted and punished for an offense may not have a nonremedial civil penalty imposed against him for the same offense in a separate proceeding." Dept. of Revenue of Montana v. Kurth Ranch, 114 S.Ct. 1937, 1945 (1994).
 
 
 15
 Contrary to Rivera's argument, his sentence and forfeiture were imposed in the same criminal proceeding on the same day. The record reveals that on August 24, 1990, (1) Rivera was sentenced to his prison term, (2) his stipulation of forfeiture was filed, and (3) the Court issued its forfeiture order. Rivera asserts without any documentary or other support that the forfeiture was imposed three days earlier, on August 21, or several months earlier in July or March 1990.[3] In the face of the clear record, the Court must reject this assertion.
 
 
 16
 Furthermore, as noted above, Rivera's plea agreement incorporated the forfeiture, which was arranged pursuant to the criminal forfeiture provision contained in 21 U.S.C. section 853. That provision imposes "punishment for an offense upon which a conviction has already been entered." United States v. Herrero, 893 F.2d 1512, 1541 (7th Cir.), cert. denied, 496 U.S. 927 (1990). As such, Rivera's forfeiture was part of the overall punishment he received during the course of a single criminal proceeding. His circumstances have nothing in common with cases involving criminal and civil forfeiture proceedings that are separate both procedurally and temporally.
 
 
 17
 Rivera mentions a case he calls "United States v. Oakes" that the Ninth Circuit supposedly issued in December 1994. According to Rivera, the "Oakes" case is dead-on-point in his favor. Rivera gives no standard citation to Oakes, although he did a fair job with his "blue book" in other parts of his motion. The Court attempted to find this "Oakes" case, but had no luck. The Court concludes that "Oakes" is a phantom conjured up by Rivera.
 
 
 18
 In sum, Rivera was punished once, in a single, coordinated proceeding, based on his guilty plea to the one-count information. As such, the fundamental aspect of the Double Jeopardy Clause that protects him from "being forced to defend himself against repeated attempts to exact one or more punishments for the same offense" was not violated. United States v. $405,089.23 U.S. Currency, 33 F.3d 1210, 1215 (9th Cir.1994). Rivera's double jeopardy rights were in no way violated.
 
 Illegal Sentence
 
 19
 Rivera attacks his sentence on a variety of grounds. Central to this attack is his argument that the statutory maximum sentence he faced was twenty years. Rivera incorrectly bases this argument on a version of 21 U.S.C. section 841 that did not govern his sentence.
 
 
 20
 As Rivera correctly notes, at one time section 841(b) provided for a maximum twenty year sentence for conspiring to distribute over one kilogram of heroin. 21 U.S.C. § 841 (Supp. IV 1986, p. 641); see United States v. Meyers, 847 F.2d 1408, 1414-15 (9th Cir.1988). However, Congress increased the maximum sentence with the Narcotics Penalties and Enforcement Act of 1986, Pub.L. 99-570, 100 Stat. 3207 (1986) ("Act"). Meyers, 847 F.2d at 1414-15. Under the Act, the statutory maximum sentence for conspiring to distribute over one kilogram of heroin increased to life imprisonment. See 21 U.S.C. § 841(b)(1)(A)(i) (Supp. IV 1986); 21 U.S.C. § 846; Meyers, 847 F.2d 1414-15.[4] No doubt, certain of the Act's provisions were tied to and became effective on the same date as the Federal Sentencing Guidelines, i.e., November 1, 1987. Meyers, 847 F.2d at 1415. However, the new statutory maximum for conspiracy to distribute over one kilogram of heroin and the other enhanced penalties contained in the Act's amendment to section 841(b) became effective immediately upon the Act's enactment on October 27, 1986. See Meyers, 847 F.2d at 1415; accord United States v. Duprey, 895 F.2d 303, 311 (7th Cir.1989), cert. denied, 495 U.S. 906 (1990).
 
 
 21
 Thus, the new maximum applies to offenses committed after October 27, 1986. The next issue, then, is when Rivera committed his offense. Rivera maintains in his motion that after the DEA raided a co-conspirator's house in October 1986, he withdrew from the conspiracy. However, several factors indicate otherwise.
 
 
 22
 Rivera pled guilty to an information that charged him with personally conspiring to distribute heroin from 1982 to October 1987, not October 1986. (Plea Pet. p 9(a); Information) Also, as noted at the plea hearing, Rivera stated that the conspiracy lasted at least through October 1987 and probably into early 1988.
 
 
 23
 The presentence report ("PSR") also works against Rivera. It contains sections devoted to both the Government's version of Rivera's conduct and Rivera's own version. Rivera's version (which was compiled from an interview of Rivera and his wife) appears to contradict his statement in his present motion that the DEA raided a co-conspirator's house in 1986. It states that the Balloon People operated until at least October 1988, when the DEA made its "initial" raid. (PSR p. 5) Of course, if the 1988 DEA raid was an initial one, then no raid could have happened in 1986.
 
 
 24
 The Government's version in the PSR characterizes Rivera as the ultimate leader of the large drug distribution network described above. It also maintains that as late as 1987, Rivera was recruiting Damasco Vasquez to run the Indiana portion of the network. (PSR p. 3) On its face at least, this statement contradicts Rivera's contention that he was out of the conspiracy by October 1986.
 
 
 25
 All told, Rivera's own testimony at his plea hearing, his pleading guilty to the information, his own statement as memorialized in the PSR, and the Government's version of the facts point to Rivera having been active with the Balloon People for a year or more after the new maximum sentence took effect. His statement in his motion that he left the conspiracy in October 1986 appears as self-serving and fabricated as the "Oakes" case. See Barker v. United States, 7 F.3d 629, 633 n. 3 (7th Cir.1992), cert. denied, 114 S.Ct. 939 (1994) (noting that a district court may deny a section 2255 motion without a hearing if the defendant's allegations are "mere conclusions or inherently unreliable") (quoting United States v. Trussel, 961 F.2d 685, 689 (7th Cir.1992)).
 
 
 26
 Moreover, withdrawing from a conspiracy takes some effort. "Merely ceasing participation in the conspiracy, even for extended periods, is not enough." United States v. Bafia, 949 F.2d 1465, 1477 (7th Cir.1991), cert. denied, 504 U.S. 928 (1992). Rather, "[w]ithdrawal requires an affirmative act to either defeat or disavow the purpose of the conspiracy, such as making a full confession to the authorities or communicating to co-conspirators that one has abandoned the enterprise." Id. Rivera merely asserts that after the supposed 1986 DEA raid, he "ceased all involvement in drug distributions." (Mot. p. 5)
 
 
 27
 In general, a conspiracy that begins before a statutory amendment but ends after the amendment is governed by the amendment.[5] The Court sees no reason to apply a different rule here, and Rivera does not argue to the contrary. Since Rivera participated in the conspiracy after the effective date of the new maximum life sentence, that maximum applied to his sentencing.[6]
 
 Ineffective Assistance of Counsel
 
 28
 Rivera argues that his trial and appellate counsel provided constitutionally ineffective assistance. These arguments are governed by the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the performance prong, Rivera must show that his counsel's performance " 'fell below the objective standard of reasonableness' and 'outside the wide range of professionally competent assistance.' " Barker, 7 F.3d at 633 (quoting Strickland ). Under the prejudice prong, Rivera must show that he was prejudiced by counsel's substandard performance, i.e., that because of the performance, "the outcome [of his case] is unreliable or fundamentally unfair." Barker, 7 F.3d at 633. A court can resolve an ineffective assistance claim by deciding either Strickland prong against the defendant, and the court need not consider performance before considering prejudice. Id.
 
 
 29
 Rivera raises several arguments. He addresses counsel's performance at trial and on appeal separately. For clarity, the Court will track Rivera's organization of arguments.
 
 Trial counsel
 
 30
 Rivera first asserts that confidential informants provided all the information about his conduct. Yet he does not tie this assertion to any performance by counsel. The Court can only disregard this assertion as not specifically addressing what needs to be addressed under Strickland.
 
 
 31
 Rivera next says that counsel knew that the Government had no evidence linking him to the conspiracy after fall 1986, meaning the conspiracy was "incorrectly charged." (Mot. p. 21) Presumably, this means that counsel should not have allowed Rivera to plead guilty to participating in the conspiracy after the fall of 1986. Yet, as discussed above, all indications are that Rivera participated until late 1987 or early 1988 and Rivera offers no evidence that would have suggested a contrary state of affairs to counsel. Since counsel had no basis to argue that Rivera left the conspiracy when he now says he did, counsel did not fail the Strickland performance prong by not making such an argument. See Barker, 7 F.3d at 633 n. 3. Had they made the argument, it likely would have failed, meaning Rivera was not prejudiced.
 
 
 32
 Rivera asserts next that counsel told him he faced a maximum sentence of twenty years, when, as detailed above, he actually faced a potential life sentence.[7] As a general matter, counsel's mere inaccurate predictions of sentence do not often constitute ineffective assistance under Strickland. Barker, 7 F.3d at 633; Chichakly v. United States, 926 F.2d 624, 630 n. 11 (7th Cir.1991); United States v. Arvanitis, 902 F.2d 489, 494 (7th Cir.1990); but see United States v. Rodriguez-Luna, 937 F.2d 1208, 1215 n. 8 (7th Cir.1991) (recognizing that the limits of this principle may be reached where a lawyer grossly mischaracterizes clear and crucial sentencing law). In any event, to establish Strickland prejudice in this concept, Rivera must show a "reasonable probability that, but for [the supposed bad advice] he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Barker, 7 F.3d at 633.
 
 
 33
 Rivera has several strikes against him. To start, he has not expressly argued that he would have gone to trial if counsel had told him he faced life. On that note, then, he has not even advanced the bald assertion needed to get to first base. Hill, 474 U.S. at 60.
 
 
 34
 If, arguendo, Rivera has implicitly argued that he would have gone to trial, he still cannot show prejudice due to the safeguards that protected him from an inaccurate sentence prediction. At every turn, this Court and the proceedings Rivera participated in made clear that he understood what his sentence might be under his plea agreement. Indeed, Federal Rule of Criminal Procedure 11 obligates the trial court to conduct a comprehensive dialogue with a criminal defendant to ensure that a guilty plea is knowing and voluntary. Barker, 7 F.3d at 634 n. 5. As detailed above, this Court conducted just such a dialogue at Rivera's plea hearing, at which he swore that he understood the maximum sentence was life in prison and that no one had promised him or predicted anything different. The life sentence maximum was also clearly spelled out in the plea agreement that Rivera signed. Rivera now presents no evidence that counsel said anything different. See Rodriguez-Luna, 933 F.2d at 1215 n. 7 (noting that a postconviction defendant/movant ordinarily should present some evidence of errors by counsel that the trial record does not reflect).
 
 
 35
 The Court does not accept as a factual matter that counsel made the prediction Rivera claims. What Rivera said under oath in his plea hearing is entitled to a presumption of truthfulness. Barker, 7 F.3d at 634 n. 5. As such, the Court will not take Rivera's present unsupported and self-serving argument to contradict what he said under oath and what the record documents. See id. at 633. n. 3.
 
 
 36
 Even if counsel had predicted a twenty year maximum, Rivera's relying on that prediction would have been unreasonable in the face of the many warnings he received that the maximum was actually life. Id. at 634. Such unreasonable reliance cannot form a basis for relief for Rivera. See id. In sum, Rivera has not established a tenable ineffective assistance of counsel claim based on inaccurate predictions of sentence by his lawyers.
 
 
 37
 Rivera next argues that counsel were ineffective in failing to argue to the Court that his maximum sentence was twenty years. As covered above, the maximum was life, and thus counsel were not obligated under the Strickland performance prong to argue something different. Had they done so, they would have failed, so Rivera was not prejudiced under Strickland either.
 
 
 38
 Rivera next argues that counsel should have objected to his being sentenced on the basis that the Balloon People conspiracy distributed 3.7 kilograms of heroin.[8] Rivera baldly asserts that this amount was a "guesstimate," and "pure speculation" by the Government. Yet Rivera offers no evidence to back up this assertion, while the PSR and the Government's proffers at the plea and sentencing hearings are rife with detailed descriptions of the longevity and scope of the Balloon People conspiracy. Also, as covered above, Rivera himself said at the plea hearing that the conspiracy may have distributed up to ten kilograms. The Court rejects as conclusory and self-serving Rivera's present claim that his conspiracy distributed less than 3.7 kilograms. Barker, 7 F.3d at 633 n. 3. Since counsel had no factual basis for arguing a different amount, they had no duty under the Strickland performance prong to do so.
 
 
 39
 Moreover, Rivera's plea agreement grew out of active and creative bargaining by his counsel and the Government. See Vasquez, 966 F.2d at 256-57; United States v. Abreu, 747 F.Supp. 493, 497-500 (N.D.Ind.1990), aff'd, United States v. Vasquez, 966 F.2d 254 (7th Cir.1992). The agreement deliberately avoided what counsel appear to have believed would have been harsher sentencing under the Guidelines. See id. Also, under the pre-Guidelines scheme, Rivera had a possibility of parole. Vasquez, 966 F.2d at 259 n. 2. Given these and other variables, even if counsel had some factual basis for arguing a lesser quantity they could easily have been professionally competent in deciding to forego that argument as part of the overall plea bargaining process. Also, had counsel insisted on a lower amount, Rivera has shown no substantial probability that he would have received a lighter sentence, i.e., that he was prejudiced.
 
 Appellate counsel
 
 40
 Rivera used a separate section to discuss appellate counsel's performance. However, that section does not genuinely offer any arguments other than those already covered and seems primarily designed to anticipate the procedural default argument that the Government actually never made. As such, the Court will not further discuss the performance of appellate counsel.
 
 Other Arguments
 
 41
 Here and there, Rivera perhaps takes a few stabs at raising other arguments. This Court has liberally construed Rivera's pro se motion and concludes that any other such arguments are simply too underdeveloped to warrant being addressed.
 
 
 42
 The Court also notes that Rivera's motion refers to his affidavit for support. Rivera did not file any affidavit with his motion or anywhere else. The Court concludes that like the supposed August 21 forfeiture date, the 1986 DEA raid, and the "Oakes" case, the affidavit is a product of Rivera's imagination. Moreover, the Court doubts that anything Rivera might put in his own affidavit would substantially bolster his motion. As such, the Court will exercise its discretion to preserve scarce judicial resources to not inquire as to what the supposed affidavit might contain.
 
 CONCLUSION
 
 43
 For the foregoing reasons, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody is DENIED.
 
 
 44
 /s/ Rudy Lozano
 
 RUDY LOZANO, Judge
 United States District Court
 
 
 [1]
 The indictment had charged a conspiracy that operated until September 1989 and thus would have been governed by the Federal Sentencing Guidelines; the information, with its conspiracy termination date of October 1987, reflected the desire of Rivera and other defendants to be sentenced under pre-Guidelines law. United States v. Vasquez, 966 F.2d 254, 257 (7th Cir.1992)
 
 
 [2]
 Authorities indicate that the government bears the burden of raising a procedural default argument against a defendant's first section 2255 motion. 2 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 41.4a, p. 1197 n. 5 (2d ed. 1994); see McCleskey v. Zant, 499 U.S. 467, 477, 490, 493-94 (1991) (noting (1) that the state has the burden of raising abuse-of-the-writ against a successive state prisoner's habeas petition, and (2) that the same cause-and-prejudice standard that governs state procedural default should govern what constitutes excusable neglect for abuse-of-the-writ issues). Accordingly, the Court has not independently considered procedural default. Of course, the Government may have assumed that Rivera can get around the procedural default hurdle. See Liebman, supra, § 41.4a, pp. 1197-98 (noting that certain claims cannot be raised on direct appeal and therefore can be first raised in a section 2255 motion)
 
 
 [3]
 Rivera first raised the assertions of July and March forfeiture dates in a reply that he filed two months after the Government's response and as the Court was preparing this ruling. As such, the Court is not obligated to consider those assertions. In any event, Rivera offers no factual or legal support for these assertions
 
 
 [4]
 Rivera pled guilty to violating the conspiracy provision found at 21 U.S.C. section 846. Section 846 does not by its own terms establish the available sentences for conspiracies, but instead provides that the sentence is pegged to the sentence for the offense that was the object of the conspiracy. Most typically, the object offense is narcotics distribution, which is prohibited by 21 U.S.C. section 841. Rivera mistakenly argues that the life maximum established in section 841(b) by the 1986 Act did not apply to conspiracies completed before 1988. While the mandatory minimum in section 841(b) did not apply to section 846 conspiracies until 1988, the maximum did apply at the time of Rivera's offense, plea, and sentencing. See 21 U.S.C. § 846 (1988 ed.); United States v. Curry, 902 F.2d 912, 917 (11th Cir.1990), cert. denied, 498 U.S. 1091 (1991) (holding that the new mandatory minimum sentence engendered by the 1980 amendment to section 846 did not apply to offenses that occurred before the amendment). Also, Rivera appears to confuse the amounts of narcotics involved in the several independent distribution counts against co-defendants contained in the dismissed indictment with the quantity of heroin that, in the aggregate, Rivera pled guilty to conspiring to distribute in the information
 
 
 [5]
 See United States v. Gibbs, 813 F.2d 596, 602 (3d Cir.1987), cert. denied, 484 U.S. 822 (1987) ("[A] statutory change which takes effect during the existence of an ongoing conspiracy will subject members of that conspiracy to the later enactment."); Bafia, 949 F.2d at 1477 (noting the uniform view that the Federal Sentencing Guidelines apply to conspiracies begun before and completed after the Guidelines' effective date; United States v. Terzado-Madruga, 897 F.2d 1099, 1123 (11th Cir.1990) (applying the Guidelines to such a "straddle" conspiracy and stressing that "conspiracy is a continuing offense"); United States v. Tharp, 892 F.2d 691, 693 (8th Cir.1989) (noting the well-established rule that applying an increased penalty to conduct that began before but continued beyond the penalty's effective date does not violate ex post facto principles)
 
 
 [6]
 The Seventh Circuit suggested that Rivera's sentence was within statutory limits. Vasquez, 966 F.2d at 257. This might be dicta: it is difficult to tell whether the court actually concluded that the sentence met the limits, or merely said that the parties had not argued otherwise. See id
 
 
 [7]
 The Court is unclear whether Rivera claims his attorneys told him that the statutory maximum was twenty years, or merely that the Court would choose a sentence of no more than twenty years. The Court assumes the former; either way, the result here would be the same. Also, the Court will disregard the inconsistency in Rivera's arguing both (1) that the statutory maximum sentence was clearly twenty years, and (2) that his counsel was incompetent in advising him that the statutory or likely maximum was twenty years
 
 
 [8]
 Rivera does not make a distinct argument that his constitutional right to be sentenced on the basis of accurate information was violated. See Rodriguez-Luna, 937 F.2d at 1213 (noting this possible argument)