## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
May 19 2015, 5:30 am
CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Lorie Bohannon | Gregory F. Zoeller |
| Indianapolis, Indiana | Attorney General of Indiana |
| | Henry A. Flores, Jr. |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Lorie Bohannon, | May 19, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1409-CR-610 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Helen W. Marchal, Judge |
| *Appellee-Plaintiff* | Case No. 49G16-1405-CM-27008 |

**Crone, Judge.**

## Case Summary

[1]     Lorie Bohannon appeals her conviction for class B misdemeanor harassment following a bench trial.  She argues that the evidence is insufficient to support her conviction and that she was denied effective assistance of counsel.

Concluding that the evidence is sufficient and that she was not deprived of effective assistance of counsel, we affirm.

## Facts and Procedural History

[2]     The facts most favorable to the conviction follow.[1]  In June 2013, Bohannon went to Samuel Hutton's workplace and saw him hugging Carla Morrison. Bohannon became upset and said to Hutton, "[T]his is why you f'ing not taking my calls, texting or coming by because of her."  Tr. at 5.  Bohannon and Hutton engaged in a "heated argument."  *Id*. at 6.  Bohannon turned to Morrison and asked, "[W]ho the f was [she] and what was the extent of [her and Hutton's] relationship."  *Id*. at 7.  Bohannon repeatedly stated that she was in a relationship with Hutton.  Hutton told Bohannon that he was never in a relationship with her and that he was in a relationship with Morrison.

[3]     After that encounter and until March 2014 when charges were filed against Bohannon and a no-contact order was issued, Bohannon called and texted Morrison over a hundred times using at least five different phone numbers. Morrison knew that Bohannon was calling her because Bohannon identified herself.   When Bohannon called her, Morrison would tell her to stop calling and hang up.  Bohannon told Morrison that "she is going to play with … someone will be … hurt and it will not be her."  *Id*. at 33.  Bohannon sent texts

---

[1]  In the statement of facts in her appellant's brief, Bohannon neither supports the facts by page references to the record and the appendix nor sets forth the facts in accordance with our standard of review as required by Indiana Appellate Rule 46(A)(6).

to Morrison regarding Hutton. For example, Bohannon texted Morrison that Hutton came to Bohannon's home and got into bed with her. *Id*. at 18. Bohannon texted Morrison to tell "our man [that] we're done." *Id*. at 30. She texted Morrison that she bought Hutton's daughter Christmas presents accompanied by a photograph of Bohannon sitting on Morrison's car. *Id*. Morrison changed her phone number to attempt to stop Bohannon's calls and texts, but Bohannon discovered her new number and continued calling and texting. Morrison downloaded an app to block Bohannon's calls.

[4] Also between the June 2013 encounter and March 2014, Morrison saw Bohannon driving by or sitting outside her home and once saw Bohannon peeking through her window. In February 2014, Morrison was at work and saw Bohannon standing outside next to Morrison's car. Morrison went out to confront Bohannon, but she was gone. Morrison noticed that her car windshield was broken and two tires were slashed, and she called the police. Bohannon told a detective that she called and texted Morrison a couple of times and did so because she was frustrated with the Hutton situation.

[5] The State charged Bohannon with class A misdemeanor criminal mischief and class B misdemeanor harassment. The trial court found Bohannon not guilty of criminal mischief but guilty of harassment. Bohannon appeals.

# Discussion and Decision

## Section 1 – The evidence is sufficient to support Bohannon's harassment conviction.

Bohannon contends that her harassment conviction is unsupported by sufficient evidence. Our standard of review is well settled:

> [When] reviewing the sufficiency of the evidence needed to support a criminal conviction[,] … we neither reweigh evidence nor judge witness credibility. We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt.

*Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008) (citations omitted).

To convict Bohannon of class B misdemeanor harassment the State was required to prove beyond a reasonable doubt that she called Morrison with intent to harass, annoy, or alarm her but with no intent of legitimate communication. Ind. Code § 35-45-2-2(a)(1); Appellee's App. at 2. Here, the evidence most favorable to the judgment shows that Bohannon was upset by Morrison's relationship with Hutton, called and texted Morrison over a hundred times even though Morrison repeatedly told her not to call, and threatened to hurt Morrison. This is sufficient evidence from which a reasonable factfinder could conclude that Bohannon called Morrison with the intent to harass, annoy, or alarm her, but with no intent of legitimate communication. Bohannon asserts that the State's evidence does not show that she is the person who called Morrison and that Morrison's testimony is

inconsistent with other evidence. Bohannon's argument is merely an invitation to reweigh evidence and judge witness credibility, which we must decline. Accordingly, we conclude that sufficient evidence supports Bohannon's harassment conviction.

## Section 2 – Bohannon was not denied effective assistance of trial counsel.

[8] Bohannon also contends that she was deprived of effective assistance of trial counsel as guaranteed by the Sixth Amendment to the United States Constitution. To prevail on a claim of ineffective assistance, a defendant must demonstrate both that counsel's performance was deficient and that the defendant's case was thereby prejudiced. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, a petitioner must demonstrate that counsel's representation "'fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment.'" *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007) (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). In assessing whether counsel's performance was deficient, we recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). To establish prejudice, the defendant must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Latta v. State*, 743 N.E.2d 1121, 1125 (Ind. 2001). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Strickland*, 466 U.S. at 694).

[9] Bohannon asserts that her trial counsel's performance was deficient because he (1) limited the amount of time he spent on her case because she refused to pay him additional money, (2) failed to file a motion to dismiss the charging information, (3) failed to subpoena Morrison's cell phone records, (4) failed to introduce discovery, and (5) failed to confer with her about sentencing. To support her assertions, Bohannon presents a narrative of her meetings and discussions with her trial counsel. However, because she brings her ineffectiveness claim on direct appeal, the narrative she provides is merely her unsubstantiated version of events, and we have no testimony from her trial counsel that might explain his decisionmaking.

[10] We observe that "in the context of assessing ineffectiveness claims, typically a 'factual record must be developed in and addressed by the [trial] court in the first instance for effective review.'" *Woods v. State*, 701 N.E.2d 1208, 1216 (Ind. 1998) (quoting *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995)). A "postconviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim." *Id*. at 1219. "'When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in

fact a tactical move, flawed only in hindsight.'" *Id*. at 1216 (quoting *United States v. Taglia*, 922 F.2d 413, 417-18 (7th Cir. 1991)). Here, without the development of a factual record, Bohannon's argument does not overcome the strong presumption that her trial counsel rendered adequate assistance. Therefore, we conclude that she was not denied effective assistance of counsel.

[11] Basing on the foregoing, we affirm Bohannon's harassment conviction.[2]

[12] Affirmed.

Brown, J., and Pyle, J., concur.

---

[2] Bohannon also seeks reversal of her conviction based on the alleged inadequacy of the probable cause affidavit. However, our supreme court has held that "lack of probable cause is not grounds for dismissing a charging information." *Flowers v. State*, 738 N.E.2d 1051, 1055 (Ind. 2000); *see also Felders v. State*, 516 N.E.2d 1, 2 (Ind. 1987) ("An invalid arrest does not affect the right of the State to try a case nor does it affect the judgment of conviction."). "'The probable cause affidavit is … a means of satisfying the constitutional and statutory requirements that the pre-trial detention of the accused be based on a determination, by a neutral and detached magistrate, that probable cause exists to believe that the accused committed the crime.'" *Id*. (quoting *Gilliam v. State*, 270 Ind. 71, 80, 383 N.E.2d 297, 303 (1978)). Therefore, at this stage in the proceedings, Bohannon cannot rely on a deficient probable cause argument to obtain reversal of her conviction.