# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 20, 2016 Session

## CHRISTOPHER LOCKE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Blount County**
**Nos. C18813, C23000     David Reed Duggan, Judge**

————————————————————

**No. E2015-02027-CCA-R3-PC – Filed April 19, 2017**

————————————————————

Petitioner, Christopher Locke, pleaded guilty to one count of incest and received a three-year sentence of probation after the trial court denied judicial diversion. *State v. Christopher Locke*, No. E2010-01965-CCA-R3-CD, 2011 WL 3446442 (Tenn. Crim. App., Aug. 9, 2011), *perm. app. denied* (Tenn., Nov. 16, 2011). Petitioner appeals the denial of his petition for post-conviction relief as being untimely. Additionally, Petitioner asserts that the trial court erred by failing to conduct an independent inquiry regarding a conflict of interest between trial counsel and post-conviction counsel. Having reviewed the record, the applicable law, and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Mabern E. Wall, Knoxville, Tennessee (on appeal) Raymond Mack Garner, District Public Defender; and George Houston Waters, Assistant Public Defender (at trial), for the appellant, Christopher Locke.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Procedural history*

The procedural history of this case is somewhat convoluted and requires a detailed recitation in order to address the issues on appeal.

On July 12, 2010, Petitioner pleaded guilty to one count of incest and received an agreed upon sentence of three years. A sentencing hearing was conducted on September 3, 2010, to determine the manner of service of Petitioner's sentence and Petitioner's request for judicial diversion. The trial court denied Petitioner's request for judicial diversion. The trial court sentenced Petitioner to three years to be suspended to supervised probation and ordered Petitioner to register as a sex offender. The judgment was entered on September 13, 2010. A panel of this court affirmed the trial court's denial of judicial diversion on direct appeal. The panel noted, "[i]n his analysis, the trial judge placed considerable weight on the fact that [Petitioner] smoked marijuana in the time between his guilty plea and the sentencing hearing." *Id*. at *5. The panel concluded that the trial court did not abuse its discretion in determining that Petitioner was not amenable to correction. The facts underlying Petitioner's conviction were summarized by this court as follows:

> On or about February 15, 2009, the [petitioner] engaged in sexual intercourse with his half-sister. At the time of the offense, the defendant was nineteen years old and the victim was fifteen years old. The victim became pregnant and gave birth to a child on November 4, 2009. The child was born with birth defects which the doctors determined were indicative of incest. DNA tests revealed that the father of the child was either the victim's father or brother. It was then discovered that the defendant was the father of the child. Upon this discovery, both the defendant and the victim admitted to engaging in sexual intercourse with one another. The defendant stated that he knew what he did was unacceptable.
>
> The offense occurred at the home of the defendant, where he lived with his mother and the victim. The victim stated that she and the defendant were alone at the house one day and were "roughhousing" around. She said that this led up to them having sexual intercourse. In a taped interview with the defendant, he admitted to having sex with the victim "at least three or four times." The defendant expressed remorse about the incident in question and said he knew he must take responsibility for it.

*Id*. at *1.

An assistant public defender with the Blount County Public Defender's Office represented Petitioner at his plea submission hearing and the sentencing hearing ("trial counsel"). On January 4, 2011, while Petitioner's direct appeal was pending, trial

counsel filed a "Motion for Modification of Sentence" pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure. On June 21, 2013, trial counsel informed the trial court, "I'm basically wanting [Petitioner] to be able to post-convict me . . . [a]nd I didn't know whether Your Honor . . . would rather me file the post-conviction motion and ask that other counsel be appointed or whether you would rather go ahead and appoint other counsel and have them . . . ." The trial court appointed new counsel ("newly appointed counsel") to represent Petitioner.

Newly appointed counsel filed a petition for writ of error coram nobis on July 18, 2013. During an appearance on July 22, 2013, newly appointed counsel advised the trial court that she had filed a coram nobis petition rather than a post-conviction petition because more than one year had elapsed since the entry of the final judgment. On August 8, 2013, newly appointed counsel filed a petition for writ of audita querela. The record does not indicate the disposition on the petition for writ of error coram nobis or writ of audita querela. On January 27, 2014, newly appointed counsel advised the trial court, "[t]here is a Rule 35 pending in this case. What we think we need to do is reset this so that Your Honor can rule on a Rule 35 and then we can proceed with a post-conviction." The trial court denied Petitioner's Rule 35 motion on February 28, 2014, more than three years after it was filed.

On May 23, 2014, Petitioner filed a petition for post-conviction relief, alleging the ineffective assistance of counsel, through another assistant public defender with the Blount County Public Defender's Office ("post-conviction counsel"). Paragraph 11 of the petition states in part, "[Petitoner] has communicated to [post-conviction counsel] that he will waive any objection to a potential conflict of interest because [post-conviction counsel] and his [t]rial [c]ounsel work in the same office." The petition is verified under oath and signed by Petitioner.

On September 25, 2014, the post-conviction court filed a preliminary order, stating in pertinent part: "It is noted that the previous attorney who represented Petitioner, and who is alleged to have been ineffective in representation, is also an employee of the Public Defender's Office, but according to the [p]etition, Petitioner has waived any conflict of interest in this matter."

*Post-conviction hearing*

On September 28, 2015, the post-conviction court held a hearing to address the tolling of the statute of limitations. Trial counsel testified that she filed a timely notice of appeal from the denial of judicial diversion. She also filed the "Motion for Modification of Sentence" within the "120-day time period allotted . . . under Rule 35(f)." She testified that she did not immediately set the motion for a hearing because she wanted to

"try to develop a history . . . of [Petitioner's] compliance with probation." The filing of the Rule 35 motion was following a communication between trial counsel and the trial judge, in which the trial judge expressed that he was "second-guessing" his decision to deny judicial diversion.

Trial counsel testified that she informed Petitioner that his sentence was affirmed on direct appeal. She testified that she did not advise Petitioner at that time that he had one year in which to file a post-conviction petition. Trial counsel communicated with the assistant district attorney handling the case, who expressed some willingness to resolve the matter by agreement. Trial counsel realized in late 2012, "maybe November 2012," that judicial diversion was not available under Rule 35. Trial counsel testified that after she "exhausted all of [her] negotiations" with the assistant district attorney, she told Petitioner on May 31, 2013, "I don't believe we can obtain relief under this motion and I had filed the wrong one." Trial counsel testified that she "thought [she] was going to be able to reach an agreement" with the assistant district attorney, and therefore, she did not advise Petitioner of the post-conviction statute of limitations period.

Petitioner testified that after the trial court denied his request for judicial diversion, trial counsel told him "that she spoke with the Judge and that she thought he may be overturning his final judgment." Petitioner testified that trial counsel told him "that she was working on it and that maybe the DA would get on board." Petitioner was not aware of what kind of motion was filed. He testified, "I think [trial counsel] was trying to go for a post-conviction" but that Petitioner "really didn't understand the legal part of it." Petitioner testified about his communications with trial counsel in 2011, "I honestly don't remember what she was trying to do." He testified that he "believed she was working as hard as she could." Petitioner acknowledged that trial counsel informed him of this court's adverse decision on direct appeal. He testified that on May 31, 2013, trial counsel advised him "that something that she had filed for was in error and that she would have to give [him] a different attorney to represent [him]."

Petitioner testified that trial counsel informed him that there was a time limit within which to file a petition for post-conviction relief "a little while after [the] final ruling," which he explained was when he "started [his] probation." Petitioner testified that he did not know the difference between a post-conviction petition and a notice of appeal. Petitioner testified that his second appointed counsel advised him that he "had not been properly represented." On cross-examination, Petitioner acknowledged that he was aware that he could file a post-conviction petition alleging that he had received deficient representation by trial counsel.

The post-conviction court concluded that the post-conviction petition was time-barred. The court noted that Petitioner testified that "he knew he had a time limit on

- 4 -

filing the post-conviction petition shortly after he started probation, which would have been back in 2010. That was his testimony here today." The post-conviction court stated,

> [T]he Court's second-guessing itself does not rise to the level of a violation of petitioner's constitutional rights that would give rise to due process tolling of the statute of limitations. The petition simply wasn't timely filed. I don't see anything in this record that I believe would rise to the level of grounds for due process tolling of the statute – and especially in light of [Petitioner]'s testimony here today that he knew that he had a time limitation on the filing of the petition shortly after he started probation.
>
> And furthermore, and what I'm about to say is not insignificant, my understanding of the law is that even if there is a ground for due process tolling of the statute of limitations, the claim must still be presented in a meaningful time and within a reasonable opportunity afforded by due process tolling. And that just didn't happen here, even if I found that there were grounds, which I found that there were not.

*Analysis*

Petitioner contends that the post-conviction court erred in failing to toll the statute of limitations on due process grounds. Petitioner argues that trial counsel's erroneous pursuit of a post-judgment motion "created an extraordinary circumstance that prevented . . . timely filing." The State contends that the record supports the post-conviction court's finding that Petitioner was made aware of the post-conviction limitations period shortly after sentencing in 2010 and that trial counsel's Rule 35 motion was not an extraordinary impediment to timely filing. Petitioner also contends that a conflict of interest existed between Petitioner's trial counsel and post-conviction counsel because both attorneys worked for the same public defender's office. The State responds that Petitioner knowingly and voluntarily waived any conflict of interest.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297

S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

Tennessee's Post-Conviction Procedure Act provides that a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred." T.C.A. § 40-30-102(a). Our legislature emphasized the fact that "[t]ime is of the essence of the right to file a petition for post-conviction relief," and provided only three narrow exceptions to the statute of limitations: (1) a new constitutional right with retrospective application; (2) new scientific evidence establishing actual innocence; and (3) the invalidation of convictions underlying an enhanced sentence. T.C.A. § 40-30-102(b).

Tennessee courts have also recognized that, in certain circumstances, strict application of the statute of limitations would deny a petitioner the reasonable opportunity to bring a post-conviction claim and that, in these instances, due process requires the tolling of the statute of limitations. In *Whitehead v. State*, our supreme court discussed due process in a post-conviction context. The court identified three scenarios in which due process requires tolling the post-conviction statute of limitations. 402 S.W.3d 615, 623-24 (Tenn. 2013); *see also Williams v. State*, 44 S.W.3d 464 (Tenn. 2001); *State v. Nix*, 40 S.W.3d 459 (Tenn. 2001); *Seals v. State*, 23 S.W.3d 272 (Tenn. 2000); *Sands v. State*, 903 S.W.2d 297 (Tenn. 1995); *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992). The first of the three circumstances involves claims for relief that arise after the statute of limitations has expired. *Whitehead*, 402 S.W.3d at 623. The second due process basis for tolling the statute of limitations involves prisoners whose mental incompetence prevents them from complying with the statute's deadline. *Id.* at 624. The third exception is when attorney misconduct necessitates the tolling of the statute of limitations. *Id.*

Elaborating on this third exception, our supreme court concluded that a petition for post-conviction relief is entitled to due process tolling of the statute of limitations based upon the conduct of the petitioner's attorney when (1) the petitioner had been diligently pursuing his or her rights and (2) extraordinary circumstances prevented the timely filing of the petition. *Whitehead*, 402 S.W.3d at 631 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The court clarified that "pursuing his or her right diligently" did "not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts" to pursue the claim. *Id.*

(quoting *Downs v. McNeil*, 520 F. 3d 1311, 1323 (11th Cir. 2008)) (internal quotation marks omitted). The second prong is met when a petitioner's attorney of record abandons the petitioner or acts in a way directly adverse to the petitioner's interests, such as by actively lying or otherwise misleading the petitioner to believe things about his or her case that are not true. *Id.* (citations omitted).

"'Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness.'" *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011) (quoting *Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010)). As this court has previously explained, "due process serves to toll the post-conviction statute of limitations for petitioners who face circumstances beyond their control . . . which preclude them from actively raising their post-conviction claims." *Crystle D. Rutherford v. State*, No. M2013-01575-CCA-R3-PC, 2014 WL 1669960, at *2 (Tenn. Crim. App., Apr. 25, 2014) (citing *Williams v. State*, 44 S.W.3d 464, 469 (Tenn. 2001)).

There is no dispute that Petitioner's post-conviction petition was filed outside the one-year statute of limitations. The State argues that the evidence does not preponderate against the post-conviction court's finding that Petitioner acknowledged that he was made aware of the time limit on pursuing post-conviction relief shortly after sentencing in 2010. We disagree. Petitioner testified as follows:

Q. [Petitioner], did you know that there was a time period within which you have to file a post-conviction relief petition?

A. Yes.

Q. Did you know there was a limit to when you can file that?

A. Yes, sir.

Q. How did you find that out?

A. [Trial counsel] informed me.

Q. When did she tell you that?

A. Might have been a little while after the final ruling.

Q. A little while after the final ruling – what's the final ruling?

- 7 -

A. When I started my probation.

Q. Okay, at that point, was that a post-conviction petition she was speaking about?

A. I don't recall.

Q. Did you ever have discussed [sic] with you that you could file a notice of appeal to the Court of Criminal Appeals after the final ruling?

A. Yes, sir, I believe so.

Q. Did you ask her to do that?

A. Yes.

Q. In your understanding, [Petitioner], can you tell the Court what you understand the difference to be between a post-conviction petition and a notice of appeal?

A. I honestly don't know the difference.

Q. You say you don't know a difference between the two?

A. I didn't understand the difference.

Furthermore, trial counsel testified that she did not inform Petitioner about the statute of limitations for filing a post-conviction petition. It is not clear from the testimony whether Petitioner was, in fact, informed about the post-conviction statute of limitations, or whether he confused it with the time limit for filing a notice of appeal. Nevertheless, we conclude that even if Petitioner was unaware, it does not require the tolling of the statute of limitations.

"Short of active misrepresentation . . . [the supreme court has] never held that trial or appellate counsel's inadvertent or negligent failure to inform his or her client of the right to file a post-conviction petition constitutes ineffective assistance of counsel" sufficient to toll the statute of limitations in post-conviction proceedings. *Smith*, 357 S.W.3d at 358; *see also Williams*, 44 S.W.3d at 468 n. 7. This court has consistently held that "a petitioner's personal ignorance of post-conviction procedures, 'even when alleged to stem from an attorney's negligent failure to render advice to the petitioner, does not toll the running of the statute' of limitations." *Joshua Jacobs v. State*, No. M2009-

02265-CCA-R3-PC, 2010 WL 3582493, at *3 (Tenn. Crim. App., Sept. 15, 2010), *perm. app. denied* (Tenn., Jan. 20, 2011) (quoting *State v. Phillips*, 904 S.W.2d 123, 124 (Tenn. Crim. App. 1995)); *see also Joseph Nelson v. State*, No. W2012-02234-CCA-R3-PC, 2013 WL 6001955 (Tenn. Crim. App., Nov. 12, 2013); *James Wesley Osborne v. State*, No. E2010-01548-CCA-R3-PC, 2012 WL 953102 (Tenn. Crim. App., Mar. 20, 2012), *perm. app. denied* (Tenn., June 20, 2012); *Leah Joy Ward v. State*, No. W2009-00088-CCA-R3-PC, 2010 WL 481211 (Tenn. Crim. App., Feb. 11, 2010), *perm. app. denied* (Tenn., Sept. 7, 2010); *Kimberly Ruth Brown v. State*, No. M2007-00128-CCA-R3-PC, 2008 WL 886302 (Tenn. Crim. App., Apr. 2, 2008). As one panel of this court put it, "the law is well settled that mere ignorance of the law concerning the statute of limitations, or even the existence of the statute of limitations, by whatever means (other than mental incompetence), does not rise to the status of being violative of constitutional due process." *Guillermo Matiaz Juan v. State*, No. 03C01-9708-CR-00318, 1999 WL 76453, at *2 (Tenn. Crim. App., Feb. 18, 1999), *perm. app. denied* (Tenn., July 12, 1999).

We agree with the State's assertion that trial counsel's filing of a Rule 35 motion was not an extraordinary impediment to the timely filing of a post-conviction petition. At the conclusion of the majority's opinion in *Whitehead*, our supreme court stated,

> As we recently noted, "[i]n every case in which we have held the statute of limitations is tolled, the pervasive theme is that circumstances beyond a petitioner's control prevented the petitioner from filing a petition for post-conviction relief within the statute of limitations." *Smith v. State*, 357 S.W.3d at 358. This observation holds true today.

402 S.W.3d at 634.

We also agree with the State that Petitioner has made no showing that he was making any attempts to diligently pursue his rights during the three years and eight months between his sentencing and the filing of his post-conviction petition, including the nearly nineteen months between the supreme court's denial of his T.R.A.P. 11 application, when the statute of limitations began to run, and June, 2013, when trial counsel announced in court that she wanted Petitioner to be able to "post-convict" her. He still waited almost another year to file a post-conviction petition.

Regarding Petitioner's claim that the post-conviction court erred by failing to conduct an independent inquiry into the conflict of interest between trial counsel and post-conviction counsel, who both worked in the same public defender's office, the State asserts that Petitioner knowingly and voluntarily waived the conflict of interest.

- 9 -

There is no constitutional right to effective assistance of counsel in a post-conviction proceeding. *Frazier*, 303 S.W.3d at 680 (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)). There is a statutory right to appointed post-conviction counsel in Tennessee "upon filing a petition that states a colorable claim" and where the post-conviction court is satisfied that the petitioner is indigent . . . ." *In re Carrington H.*, 483 S.W.3d 507, 530 (Tenn. 2016); T.C.A. § 40-30-107(b)(1). Our supreme court has interpreted this statutory right to include the right to be represented by conflict-free counsel. *Frazier*, 303 S.W.3d at 681-82.

Our Rules of Professional Conduct dictate that "[a] lawyer shall not represent a client if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, Rule 1.7. "Conflict of interest 'includes any circumstances in which an attorney cannot exercise his independent professional judgment free' of competing interests." *Frazier*, 303 S.W.3d at 682 (quoting *State v. Culbreath*, 30 S.W.3d 309, 312 (Tenn. 2000)). For example, "'[T]rial counsel . . . can hardly be expected to challenge . . . his own effectiveness . . . .'" *Frazier*, 303 S.W.3d at 682-83 (quoting *U.S. v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991)). And "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so." Tenn. Sup. Ct. R. 8, Rule 1.10(a). A conflict may be waived, however, if "(1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents in writing after consultation." *Frazier*, 303 S.W.3d at 683 (citing Tenn. Sup. Ct. R. 8, Rule 1.7(b)).

Where a trial court is aware of a conflict of interest, "there must be an inquiry as to its nature and appropriate measures taken." *Frazier*, 303 S.W.3d at 683. Otherwise, prejudice will be presumed. *Id*.

Petitioner asserts, and the State concedes, that his post-conviction counsel was conflicted because he worked in the same public defender's office as Petitioner's counsel during his plea and sentencing. Under our supreme court's decision in *Frazier*, a post-conviction court has the duty to conduct an independent inquiry into this conflict before an evidentiary hearing. 303 S.W.3d at 685. The State contends that Petitioner expressly waived the conflict, and, unlike *Frazier*, this case was procedurally dismissed on statute of limitations grounds. The State argues that "post-conviction counsel's imputed conflict did not at all hinder his zealous effort to establish grounds for tolling during the hearing on that issue."

A post-conviction petitioner may knowingly and voluntarily waive the right to conflict-free counsel. *Frazier*, 303 S.W.3d at 684-85. Here, the post-conviction petition,

verified under oath by Petitioner, states that Petitioner "has communicated to [post-conviction counsel] that he will waive any objection to a potential conflict of interest because [post-conviction counsel] and his [t]rial [c]ounsel work in the same office." The petition sets forth the procedural history of the case and trial counsel's representation of Petitioner and the specific allegations of trial counsel's deficiencies. We note that the post-conviction court addressed and implicitly accepted Petitioner's waiver of the conflict in a "Preliminary Order," in which the court stated,

> It is noted that the previous attorney who represented Petitioner, and who is alleged to have been ineffective in representation, is also an employee of the Public Defender's Office, but according to the Petition, Petitioner has waived any conflict of interest in this matter.

Another distinction between *Frazier* and the case sub judice is that the conflict of interest in *Frazier* was a direct rather than an imputed conflict. Furthermore, *Frazier* did not involve a procedural dismissal on statute of limitations grounds. As the supreme court observed in *Smith v. State*,

> *Frazier* did not involve the application of due process tolling under *Burford*, *Seals*, and *Williams*. The untimeliness of Mr. Frazier's post-conviction petition was never an issue because the State conceded that Mr. Frazier was entitled to a delayed appeal and the trial court granted that relief. Under those unique facts, we remanded the case back to the trial court for an inquiry into whether Mr. Frazier waived the conflict of interest. We elected not to affirm the judgment of the Court of Criminal Appeals on the alternative basis that the underlying petition was untimely.

357 S.W.3d 322, 360 (Tenn. 2011).

In *Frazier*, the post-conviction court conducted a hearing on the merits without first addressing post-conviction counsel's direct conflict of interest. 303 S.W.3d at 678. Here, the post-conviction court dismissed the petition on procedural grounds without holding an evidentiary hearing on the merits. In light of our conclusion that the post-conviction court's dismissal of Petitioner's post-conviction petition as untimely was not error, it is unnecessary to remand this case for consideration of the conflict of interest issue. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE