Manion, Circuit Judge, dissenting.
Daniel Ballard needed money to complete an over-budget construction project, so he obtained a loan ostensibly to improve two other properties. When it was discovered that he never did any work on the other properties, he was investigated for bank fraud. He was eventually charged with making false representations to a title company in order to obtain a disbursement of funds from the fraudulent loan. His main defense at trial seems to have been that he did not bother to read the admittedly false Sworn Contractor's Statements submitted to the title company to obtain the disbursement. Implausible as that may be on its face, the government refuted the defense by calling multiple witnesses-including an FDIC special agent and the former bank president-who told the jury that Ballard had admitted he knew the representations he made in Sworn Contractor's Statements were false. The jury convicted him.
But after the trial, a recording surfaced of a 2009 conversation between Ballard's loan officer (and government witness) Joe Grant and convicted fraudster Scott Fitts. In the recording, the two men discussed a loan Fitts had obtained from Grant that eventually led to Fitts' conviction. Ballard moved for a new trial. The district court held that (1) the recording was relevant as potential impeachment of Grant; and (2) the potential impeachment was material because it may have made Ballard's "I didn't read the Statements" defense "much more plausible." As a result, it ordered a new trial. The court today affirms that decision. I cannot agree. Because I conclude that disclosure of the recording before trial would have had no effect on the outcome, I would reverse the decision below and remand with instructions to reinstate the jury verdict.
As the court recognizes, material evidence for the purposes of Brady v. Maryland , 373 U.S. 83, 83 (S.Ct. 1194, 10 L.Ed.2d 215 1963), is "evidence that (if disclosed in a timely way) would have created a reasonable probability of a different result." United States v. Wilson , 237 F.3d 827, 832 (7th Cir. 2001). The question before us is whether the impeachment evidence contained in the recording is significant enough "to undermine confidence in the verdict." Kyles v. Whitley , 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). For several reasons, I believe it is not.
First, despite Ballard's representations to the contrary, the recording is not "exculpatory evidence." "Exculpatory" refers only to evidence "tending to establish a criminal defendant's innocence." Black's Law Dictionary 577 (7th ed. 1999). The recording has nothing to do with this case, and thus does not tend to prove that Ballard is innocent. Its only potential value is as impeachment of Grant. But "[t]he practice has been to deny new trials where the only newly discovered evidence was impeaching." United States v. Taglia , 922 F.2d 413, 415 (7th Cir. 1991). "[I]t will be the rare case in which impeaching evidence warrants a new trial, because ordinarily such evidence will cast doubt at most on the testimony of only one of the witnesses." Id. That is certainly the case *507 here.[1] And while Ballard attempts to cast Grant as the government's "key witness," in reality he was just one of thirteen witnesses. Several other witnesses established the facts necessary for Ballard's conviction: that Ballard knowingly made false representations to the title company in order to obtain the money.
Second, and perhaps most importantly, Grant's credibility is irrelevant to the dispositive issue: whether Ballard read the Sworn Contractor's Statements and knew they were false. Ballard's counsel indicated at trial that he did not intend to argue that Grant knew the representations made in the Statements were false. That is the missing link in the district court's analysis. After all, if Grant didn't know whether the Statements were false, it follows that impeaching Grant's credibility wouldn't affect the government's ability to prove that Ballard knew they were false. In other words, the district court's assertion that further impeachment of Grant would have helped Ballard's "I didn't read the Statements" defense was simply wrong. I would not defer to that finding because it lacks record support. See United States v. Savage , 505 F.3d 754, 760 (7th Cir. 2007) (the abuse of discretion standard means "we will not reverse unless the record contains no evidence upon which the trial judge rationally could have based his decision.").
Third, the recording's weight is further compromised because it would be inadmissible at a new trial. Federal Rule of Evidence 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." So although Ballard's counsel might make use of the recording to cross-examine Grant at a new trial, counsel would be stuck with Grant's answers. See United States v. Veras , 51 F.3d 1365, 1375 (7th Cir. 1995). The jury will never hear the recording. That makes the recording much less valuable than Ballard would like to admit.
Finally, I must address Ballard's continuing assertions that his true defenses have been that the State Bank of Herscher is a "crooked bank" and that Grant knew exactly what was going on with the Ballard loan. If these were valid defenses to bank fraud, then perhaps Grant's credibility-and specifically the subject matter of the recording-would be relevant to the outcome of the trial. But it is settled law that "the loan officer was in on it" is not a defense to bank fraud. See United States v. Allender , 62 F.3d 909, 915-16 (7th Cir. 1995) (finding no error with a jury instruction to that effect). And Ballard provides no authority to support his theory that the supposed corruption all the way to the top of the bank, even if proven, would absolve him of responsibility for the misrepresentations.[2] With these "defenses" out of the *508 picture, further impeachment of Grant would not help Ballard in the least.
I conclude that the existence of the Grant-Fitts recording does not undermine confidence in the verdict against Ballard. Therefore, I would reverse the decision to grant a new trial and remand with instructions to reinstate the guilty verdict. I respectfully dissent.

The court is correct that district courts are not helpless to grant new trials because of suppressed impeachment evidence. Yet the lesson of Taglia is that withheld impeachment evidence impugning the credibility of only one witness will rarely be enough to undermine confidence in the verdict. That's especially true when, as in this case, the credibility of the impeached witness is irrelevant to the defense asserted.

Failure to cite authority (whether it be from the record or case law) for his assertions is a common problem in Ballard's brief. Worst of all, Ballard fails to identify anything Grant said at trial that, had the jury disbelieved it, would have changed the result. "We will not scour a record to locate evidence supporting a party's legal argument." Estate of Moreland v. Dieter , 395 F.3d 747, 759 (7th Cir. 2005). In my view, Ballard failed to develop several points and waived any response he might have had to many of the government's well-reasoned arguments.